UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RITA JOHANSEN,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>            Defendant. | No. ED CV 08-285-PLA<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 12, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 4, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 26, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 26, 1960. [Administrative Record ("AR") at 59, 61, 66, 87.] She has a high school education and has completed vocational training as a veterinary technician. [AR at 74, 414.] Plaintiff has past relevant work experience as, among other things, a greeter, salesperson, and a veterinary technician. [AR at 70-71, 79-86.]

On December 9, 2004, plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been disabled since December 1, 2003, due to fibromyalgia, possible arthritis, disintegrating cartilage in her left knee, carpal tunnel syndrome, and trigger fingers in both hands. [AR at 61-65, 66-68, 69-78, 87-89, 108, 114, 123.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 24-25, 43-58.] A hearing was held on September 11, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 408-31.] A vocational expert also testified. [AR at 422-24, 428-30.] On October 26, 2007, the ALJ determined that plaintiff was not disabled. [AR at 11-23.] Plaintiff requested review of the hearing decision. [AR at 10.] When the Appeals Council denied plaintiff's request for review on January 11, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1] [AR at 16.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "is status post left knee arthroscopy (2002) with moderate to severe lateral compartment osteoarthritis; back disorder; status post bilateral carpal tunnel and trigger finger releases; [and] fibromyalgia."[2] [AR at 16.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 17.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform sedentary work[4] with the following restrictions: she cannot use her left knee

---

[1] The ALJ also determined that plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2009." [AR at 16.]

[2] The ALJ also concluded that plaintiff "has an adjustment disorder with mixed emotional features which is not severe as that term is defined in the Regulations." [AR at 16.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a),

4

for pushing and pulling controls, has occasional postural restrictions, cannot climb ladders, ropes or scaffolding, and is limited to frequent fine and gross manipulation with her right dominant hand. [AR at 17.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 21-22.] At step five, the ALJ found, based on the vocational expert's testimony, that there are a significant number of jobs in the regional and national economies that plaintiff is capable of performing. [AR at 22-23.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 23.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the opinion of the treating physician; (2) pose a complete hypothetical question to the vocational expert; (3) make proper credibility findings; and (4) properly determine the listing level severity and/or medical equivalence of plaintiff's impairments. Joint Stipulation ("Joint Stip.") at 2-3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's

---

416.967(a).

opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[5] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Plaintiff argues that the ALJ failed to properly consider the treating physician's opinion. Specifically, plaintiff asserts that the ALJ did not consider all of the restrictions found by plaintiff's treating physician, Dr. James A. Keating, and did not provide specific and legitimate reasons for his failure to do so. Joint Stip. at 3-4. As discussed below, the Court agrees with plaintiff.

Dr. Keating treated plaintiff for over a year. [AR at 363-76, 378-401.] On May 7, 2007, Dr. Keating completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" ("Medical Opinion form") concerning plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. [AR at 369-70.] In the Medical Opinion form, Dr. Keating indicated that plaintiff has the following limitations: (1) she can lift and carry 10 pounds on an occasional basis; (2) she can lift and carry less than 10 pounds on a frequent basis; (3) she can stand and walk (with normal breaks) for about two hours during an eight-hour day; and (4) she can sit (with

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

normal breaks) for less than two hours during an eight-hour day. [AR at 369.] With respect to the performance of certain physical functions, Dr. Keating opined that plaintiff's ability to push and pull is affected by her impairments. Dr. Keating further opined that the physical functions of reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), and feeling are not affected by plaintiff's impairments. [AR at 370.] As for environmental restrictions, Dr. Keating noted that plaintiff needs to avoid concentrated exposure to extreme cold. [AR at 370.] Furthermore, Dr. Keating concluded that plaintiff is likely to be absent from work more than three times a month as a result of her impairments or treatment.[6] [Id.]

In the decision, the ALJ summarized Dr. Keating's findings in the Medical Opinion form as follows: "[T]he report shows the claimant's lifting was limited to 10 pounds, and that she could stand and walk a maximum of about two hours during an eight hour day. [Dr. Keating] also noted limitation of two hours for sitting and limitations in pushing and pulling." [AR at 20 (citation omitted).] The ALJ gave "significant weight" to the Medical Opinion form completed by Dr. Keating. [AR at 21.] However, the ALJ rejected the limitations on sitting found by Dr. Keating because the objective clinical findings and back x-rays were not consistent with the degree of limitation noted by Dr. Keating. [Id.]

Although the ALJ in the decision gave "significant weight" to Dr. Keating's May 7, 2007, Medical Opinion form, the ALJ's failure to completely consider and properly address certain of Dr. Keating's findings therein undercuts his reliance on the Medical Opinion form, and thus his determination of plaintiff's RFC. The RFC assessment must be made "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545, 416.945. Examples of the types of evidence required to be considered in making an RFC assessment include medical history, medical signs, laboratory findings, recorded observations, and medical source statements. See SSR 96-8p. The RFC assessment must always consider and address medical source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ must explain why

---

[6] The Court notes that the Medical Opinion form appears to be missing a page as questions 5 through 8, as well as any responses thereto, are not included in the record. [AR at 369-70.]

the opinion was not adopted.[7]  See SSR 96-8p; see also Thompson v. Barnhart, 2006 WL 709795, at *13 (E.D. Pa. March 15, 2006) ("'Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.'") (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981)).

In determining plaintiff's RFC, the ALJ failed to discuss Dr. Keating's finding that plaintiff would be absent from work more than three times a month, and did not provide any explanation for his failure to do so.[8]  The ALJ cannot selectively rely on only those portions of a medical opinion that support his ultimate conclusion.  See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784,

---

[7]  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

[8]  Defendant contends that Dr. Keating's finding in the Medical Opinion form that plaintiff likely would be absent from work more than three times a month "was not supported by the objective evidence."  Joint Stip. at 6.  Whether or not Dr. Keating's finding was supported by objective evidence, the ALJ in the decision did not proffer that as a reason for ignoring this finding. Indeed, the ALJ made no reference whatsoever to Dr. Keating's finding concerning the average anticipated frequency of plaintiff's absence from work based on her impairments or treatment.  As such, defendant's *post hoc* attempt to justify the ALJ's failure to address Dr. Keating's finding is not sufficient to cure the error.  See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); see also Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Given that the ALJ assigned "significant weight" to the findings of Dr. Keating, the ALJ erred by failing to properly consider, or to provide sufficient reasons for rejecting, Dr. Keating's finding in determining plaintiff's RFC that plaintiff likely would be absent from work more than three times a month as a result of her impairments or treatment.[9]

Plaintiff further contends that the ALJ's hypothetical question posed to the vocational expert was incomplete in that it did not accurately describe plaintiff's impairments, and that the vocational expert could not appropriately assess whether jobs exist that plaintiff can perform in light of the extent of her limitations. Joint Stip. at 7-8. Specifically, plaintiff argues that the hypothetical did not include Dr. Keating's opinion that plaintiff likely would miss more than three days of work a month. In light of the Court's conclusion that the ALJ failed to properly consider Dr. Keating's finding that plaintiff likely would be absent from work more than three times a month as a result of her impairments or treatment, and given the vocational expert's response on cross-examination at the September 11, 2007, hearing that a person who is "off task" 20 percent of the time due to

---

[9] The ALJ not only failed to offer any explanation for disregarding Dr. Keating's finding that plaintiff likely would be absent from work more than three times a month, but also failed to fully consider the Medical Opinion form, as the form as contained in the record is incomplete. See supra, fn. 6. Indeed, nothing in the ALJ's opinion indicates that the form he considered in reaching his decision contained the missing section. Because the form provided an opinion regarding plaintiff's physical limitations, the ALJ should have made a reasonable effort to obtain the missing portion of the Medical Opinion form. Absent this information, it was impossible for the ALJ to properly consider and determine the relative weight to afford the findings in the form. Thus, upon remand, the ALJ is instructed to make efforts to obtain a complete copy of the Medical Opinion form. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

pain would be unable to work [AR at 430], the ALJ is instructed on remand to pose a hypothetical question that contains all relevant limitations. Accordingly, remand is warranted.[10]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the findings of plaintiff's treating source. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 6, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] As the ALJ's consideration on remand of Dr. Keating's findings may impact on the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order.